**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

STUART FORCE, individually and as the personal
representative of the Estate of TAYLOR FORCE,
and HANANEL GEZ,

                                   Plaintiffs,

v.

THE PALESTINIAN AUTHORITY and
THE PALESTINE LIBERATION
ORGANIZATION,

                                   Defendants.

Case No. 25-cv-08582-CM

**ORAL ARGUMENT REQUESTED**

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**SQUIRE PATTON BOGGS (US) LLP**
Gassan A. Baloul
Mitchell R. Berger
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

*Attorneys for Defendants*

February 9, 2026

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ......................................................................................................................... 5

    I.    Plaintiffs Fail to Allege that a Foreign Terrorist Organization Was
    Responsible for the Attacks. .................................................................................. 5

    II.    The Complaint Does Not Allege—Let Alone Support the Implausible
    Claim—That Bitter Rivals Hamas and Defendants Were Close
    Collaborators. ........................................................................................................ 6

    III.    Plaintiffs Fail to State Other Key Elements of an Aiding-And-Abetting
    Claim. ................................................................................................................... 10

        A.    The Complaint Fails To Show That Defendants Knowingly And
        Substantially Assisted The Attacks. ........................................................ 10

        B.    The Complaint Fails To Show That Defendants Were "Generally
        Aware" They Were Assuming A Role In Terrorist Activity. ................... 17

CONCLUSION ...................................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashley v. Deutsche Bank Aktiengesellschaft,*
144 F.4th 420 (2d Cir. 2025) ...................................................................................... *passim*

*Atchley v. AstraZeneca UK Limited,*
2026 WL 184415 (D.C. Cir. Jan. 23, 2026)..................................................................17

*AXA Marine & Aviation Ins. (UK) Ltd. v. Seajet Indus. Inc.,*
84 F.3d 622 (2d Cir. 1996)...........................................................................................9

*Bernhardt v. Islamic Republic of Iran,*
47 F.4th 856 (D.C. Cir. 2022).................................................................................17, 18

*Bonacasa v. Standard Chartered PLC,*
2023 WL 7110774 (S.D.N.Y. Oct. 27, 2023) ..........................................................14

*Clark v. Kitt,*
2014 WL 4054284 (S.D.N.Y. Aug. 15, 2014)...........................................................1

*Force v. Islamic Republic of Iran,*
464 F. Supp. 3d 323 (D.D.C. 2020)....................................................................2, 7, 8

*Fraenkel v. Standard Chartered Bank,*
2025 WL 2773251 (S.D.N.Y. Sept. 26, 2025)......................................13, 14, 15, 16

*Gallop v. Cheney,*
642 F.3d 364 (2d Cir. 2011)........................................................................................10

*Generali - U.S. Branch v. Genesis Ins. Co.,*
1997 WL 27040 (S.D.N.Y. Jan. 23, 1997) ................................................................9

*Gilmore v. Palestinian Interim Self-Gov't Auth.,*
843 F.3d 958 (D.C. Cir. 2016) .....................................................................................4

*Graham v. UMG Recordings, Inc.,*
2025 WL 2879607 (S.D.N.Y. Oct. 9, 2025) .............................................................1

*Honickman v. BLOM Bank SAL,*
6 F.4th 487 (2d Cir. 2021) ........................................................................................18

*Jean-Baptiste v. United States DOJ,*
2023 WL 2648152 (S.D.N.Y. Mar. 27, 2023) ........................................................10

*Jeffery v. City of New York*,
    113 F.4th 176 (2d Cir. 2024) ............................................................................................1

*Kramer v. Time Warner Inc.*,
    937 F.2d 767 (2d Cir. 1991) ..............................................................................................1

*Lavi v. UNRWA USA Nat'l Comm., Inc.*,
    2025 WL 2300038 (D. Del. Aug. 8, 2025) .......................................................................16

*Linde v. Arab Bank, PLC*,
    882 F.3d 314 (2d Cir. 2018) ................................................................................10, 12, 18

*Long v. MTN Group Ltd.*,
    2025 WL 2827899 (E.D.N.Y. Sept. 25, 2025) .......................................................5, 12, 13, 15

*Murad v. Lafarge S.A.*,
    2026 WL 270651 (E.D.N.Y. Jan. 30, 2026) ...............................................................11, 14, 17

*Ofisi v. BNP Paribas, S.A.*,
    77 F.4th 667 (D.C. Cir. 2023) ..........................................................................................13

*Owens v. BNP Paribas S.A.*,
    235 F. Supp. 3d 85 (D.D.C. 2017) ....................................................................................11

*Parizer v. AJP Educ. Found., Inc.*,
    2025 WL 2382933 (E.D. Va. Aug. 15, 2025) ...............................................................11, 15

*Shatsky v. PLO*,
    2017 WL 2666111 (D.D.C. June 20, 2017) .........................................................................3

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*,
    605 U.S. 280 (2025) ...............................................................................................10, 15, 16

*Sokolow v. PLO*,
    60 F. Supp. 3d 509 (S.D.N.Y. 2014) .................................................................................11

*Twitter, Inc. v. Taamneh*,
    598 U.S. 471 (2023) ...................................................................................................... *passim*

*Vill. on Canon v. Bankers Tr. Co.*,
    1997 WL 47804 (S.D.N.Y. Feb. 5, 1997) ............................................................................9

*Wildman v. Deutsche Bank Aktiengesellschaft*,
    2022 WL 17993076 (E.D.N.Y. Dec. 29, 2022) .................................................................18

**Statutes**

18 U.S.C. § 2333 .......................................................................................................... *passim*

18 U.S.C. § 2339A ............................................................................................................3

18 U.S.C. § 2339B ............................................................................................................3

**Other Authorities**

*6 Die as Palestinian Authority Forces Clash With Hamas*,
    NY Times (May 31, 2009)................................................................................................6

*Gaza foes tossed from buildings*,
    Seattle Times (June 11, 2007).........................................................................................6

*Gaza: Palestinians tortured, summarily killed by Hamas forces during 2014 conflict*,
    Amnesty Int'l (May 27, 2015) .........................................................................................6

*Hamas: Background, Current Status, and U.S. Policy*,
    No. IF12549, Cong. Research Serv. (Oct. 23, 2024) .....................................................7

*Hamas seizes control in Gaza, ousting Fatah*,
    NY Times (June 15, 2007)...............................................................................................6

*Hamas seizes Fatah headquarters in Gaza*,
    NBC News (June 11, 2007) .............................................................................................6

*Human Rights Reports: Israel and the occupied territories*,
    U.S. State Dep't (May 24, 2012) ....................................................................................6

*Israel and Hamas October 2023 Conflict*,
    No. R47754, Cong. Research Serv. (Oct. 20, 2023).......................................................6

*Israel, Golan Heights, West Bank, and Gaza*,
    U.S. State Dep't ...............................................................................................................6

*Israel says it foiled Hamas plan for massive attacks on Israel, coup against PA*,
    Times of Israel (Aug. 18, 2014)......................................................................................7

*Palestinian Authority President Abbas faces backlash over cutting 'pay-for-slay' salaries*,
    Jerusalem Post (Dec. 25, 2025)......................................................................................9

*Palestinian Authority Sparks Fury by Cutting Prisoner Payments*,
    Bloomberg (Dec. 31, 2025) ............................................................................................9

*Palestinian Intel Chief - and Abbas' Potential Successor - Boasts of Efforts to Foil*
    *Attacks Against Israel*, Haaretz (Jan. 31, 2016),.........................................................8

*The Crisis of the Gaza Strip: A Way Out*,
    Institute for National Security Studies (2018), ...............................................................7

*Three Hamas terrorists set to be charged for involvement in murder of Tzeela Gez,*
Times of Israel (July 18, 2025), ...............................................................................................2

## PRELIMINARY STATEMENT

Plaintiffs' single-count Complaint should be dismissed with prejudice because it incurably fails to allege essential elements of aiding-and-abetting under the Justice Against Sponsors of Terrorism Act ("JASTA"), 18 U.S.C. § 2333(d). The Complaint specifically fails to allege that the attacks at issue were committed, planned, or authorized by an organization that had been designated as a foreign terrorist organization ("FTO"). An FTO's involvement is an essential element of a JASTA aiding-and-abetting claim, necessitating dismissal.

The Complaint declines to allege that Hamas was the FTO responsible for the attacks in this case for good reason—it would require acknowledging that Defendants' bitter rival committed the March 2016 attack on Taylor Force and the May 2025 attack on the Gez family (the "Attacks"). (Unsurprisingly, the name "Hamas" is mentioned only ten times in the 63-page Complaint, all but one of which are unrelated to the Attacks.) It would also require implausible allegations that Defendants provided support to Hamas, an organization that openly seeks the destruction of the PA. As the Court can take judicial notice,[1] in other lawsuits, Plaintiff Stuart Force has argued that Hamas was responsible for the attack on Taylor Force, and Israeli authorities charged Hamas

---

[1] *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts … to establish the fact of such litigation and related filings."); *Clark v. Kitt*, 2014 WL 4054284, at *8 (S.D.N.Y. Aug. 15, 2014) ("[T]he Court can take judicial notice of these litigation documents … to establish the existence of the prior litigation, what claims were asserted, and what issues were argued and decided."), *aff'd*, 619 F. App'x 34 (2d Cir. 2015); *see also Jeffery v. City of New York*, 113 F.4th 176, 179 (2d Cir. 2024) ("We take judicial notice of media reports insofar as they detail widely documented events that plaintiffs themselves reference or generally acknowledge in their pleadings."); *Graham v. UMG Recordings, Inc.*, 2025 WL 2879607, at *9 (S.D.N.Y. Oct. 9, 2025) ("In deciding this motion to dismiss, the Court need not blind itself to the public attention garnered by this particular rap battle. The Court takes judicial notice of the extensive mainstream media reporting that surrounded the release of 'Not Like Us' and the associated feud between Drake and Lamar.").

terrorists for perpetrating the attack on the Gez family.[2]  But those details appear consciously omitted here.

Defendants the Palestinian Authority and the Palestine Liberation Organization have been in an ongoing conflict with Hamas for decades—the exact opposite of the kind of near-common enterprise that could support broad liability for Hamas attacks under Supreme Court precedent. Nor can Plaintiffs' allegations of Palestinian government programs of general applicability and political discourse support such a claim.  The implausibility of Plaintiffs' claims is further highlighted by Hamas's opposition to everything Defendants represent, including the two-state solution, security cooperation with Israel, and the Oslo Accords.

In fact, Plaintiff Force has convinced other courts that, at the funeral for the terrorist that killed Taylor Force, "**Palestinian Authority security forces … arrested a number of the funeral's participants as part of a series of arrests of open Hamas supporters**." *Force*, 464 F. Supp. 3d at 344 (cleaned up; emphasis added) (quoting expert report proffered by Plaintiff Force). Plaintiff Force has also repeatedly (and correctly) admitted that Hamas is in armed conflict with Defendants, including overthrowing Defendants in Gaza, and conducting terrorist attacks— specifically including the attack on Taylor Force—in order to undermine Defendants. *See infra* 6-8.  The Complaint must be dismissed with prejudice because its allegations hinge on the wholly implausible theory that Defendants worked hand-in-glove with Hamas—an entity diametrically opposed to everything Defendants advocate.

---

[2] *See Force v. Islamic Republic of Iran*, 464 F. Supp. 3d 323, 335, 344 (D.D.C. 2020) (quoting plaintiffs' expert as concluding "there is an 'unmistakable connection between the attack and the Hamas organization'"); *Three Hamas terrorists set to be charged for involvement in murder of Tzeela Gez*, Times of Israel (July 18, 2025), https://www.timesofisrael.com/liveblog_entry/three-hamas-terrorists-set-to-be-charged-for-involvement-in-murder-of-tzeela-gez/.

Independently, the lawsuit fails because Plaintiffs fail to tie Defendants to the Attacks. The Complaint's single count[3] relies on generic allegations of generally applicable Palestinian governmental action (or inaction) entirely unrelated to Hamas and the Attacks: that Defendants incentivized general acts of terror by making payments to "Palestinians who are imprisoned or injured—or to their families if they were killed" and by "celebrat[ing] Palestinian terrorists and terrorism, including in PA Ministry of Education schools, on PA-owned and controlled official television, in social media, and on other publicly accessible platforms." Compl. ¶¶ 4, 7. Even if the claim that the PA dictates everything said by media and clerics were taken as true on a motion to dismiss, such allegations about Defendants' general role in the Israeli-Palestinian conflict are insufficient to support Plaintiffs' claim that Defendants aided-and-abetted Hamas.

Because Plaintiffs do not plausibly allege that Defendants consciously and culpably took actions to facilitate the Attacks, their secondary-liability claim fails. Dismissal of ATA claims is appropriate in cases where, as here, Plaintiffs fail to connect Defendants' alleged support to the Attacks. For example, in *Shatsky*, the court held that Defendants' alleged financial support for a Palestinian political faction—the Popular Front for the Liberation of Palestine ("PFLP") (a Marxist political party), by paying rent for a regional office—was unmoored from the attack at issue there because "no reasonable jury could find that the PLO's payment of rent [for the PFLP] … 'caused' the bombing." *Shatsky v. PLO*, 2017 WL 2666111, at *9 (D.D.C. June 20, 2017), *vacated on other grounds*, 955 F.3d 1016 (D.C. Cir. 2020). Moreover, "after-the-fact payments [to the family of an

---

[3] The Complaint also alleges that the support allegedly provided by Defendants "also satisf[ies] the Antiterrorism Act's criminalization of providing 'material support or resources' to a Foreign Terrorist Organization. *See* 18 U.S.C. §§ 2339A and 2339B." Compl. ¶ 177. However, because Plaintiffs do not asset a primary-liability material support claim under 18 U.S.C. §§ 2339A or 2339B, Defendants—while reserving all rights—do not address those statutory elements, or why Plaintiffs' allegations fall far short of satisfying them.

attacker of the type alleged here] are not sufficient for a reasonable jury to conclude that defendants" were liable for an attack. *Id*. at \*10. The D.C. Circuit reached the same conclusion in *Gilmore v. Palestinian Interim Self-Gov't Auth*., 843 F.3d 958, 972-73 (D.C. Cir. 2016), dismissing a case for failure to connect Defendants' actions to the attack at issue.

The Supreme Court endorsed this reasoning in *Twitter, Inc. v. Taamneh*, explaining that generic assistance to an FTO does not create liability <u>unless the plaintiff can connect the support to the attack at issue</u>. *See Taamneh*, 598 U.S. 471, 481, 498, 500 (2023). Critical to this motion, "it is not enough … that a defendant have given substantial assistance to a transcendent 'enterprise' separate from and floating above all the actionable wrongs that constitute it." *Id*. at 495. Instead, an ATA secondary-liability claim under JASTA requires specific allegations that a defendant "knowingly provid[ed] substantial assistance … in the commission of the actionable wrong—here, an act of international terrorism." *Id*.; *see also Ashley v. Deutsche Bank Aktiengesellschaft*, 144 F.4th 420, 448 (2d Cir. 2025) (same).

Plaintiffs have failed to allege <u>any</u> assistance to an FTO, let alone any assistance that would be sufficient to connect the alleged support to the Attacks. To the extent Plaintiffs later admit (as they have in the past) that Hamas was responsible for the Attacks, liability in this case is wholly implausible. In any event, Plaintiffs' JASTA aiding-and-abetting claim fails under *Taamneh* and its progeny, as a matter of law, because any alleged "support" to Hamas shows neither "conscious, voluntary, and culpable participation" in the Attacks nor an "'affirmative act' 'with the intent of facilitating'" the Attacks. *Taamneh*, 598 U.S. at 490, 493; *see also Ashley*, 144 F.4th at 436, 440 (same).

## ARGUMENT

**I.     Plaintiffs Fail to Allege that a Foreign Terrorist Organization Was Responsible for the Attacks.**

The Complaint must be dismissed because it fails to plead an essential element of a JASTA aiding-and-abetting claim under 18 U.S.C. § 2333(d)—the only claim asserted in this case.  Under JASTA, an individual injured by an act of international terrorism "can sue anyone 'who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism' under § 2333(d)(2)."  *Taamneh*, 598 U.S. at 483 (quoting § 2333(d)(2)); *see also Ashley*, 144 F.4th at 435 (same).  "For such a secondary-liability claim, there is an additional condition: The 'act of international terrorism' must have been 'committed, planned, or authorized **by an organization that had been designated as a foreign terrorist organization** under [8 U.S.C. § 1189] as of the date on which such act of international terrorism was committed, planned, or authorized.'"  *Taamneh,* 598 U.S. at 483-84 (alteration in original; emphasis added) (quoting § 2333(d)(2)); *see also Ashley*, 144 F.4th at 435 (same).

The Complaint fails to allege that an FTO committed, planned, or authorized the Attacks, and indeed is devoid of allegations regarding the organization that was responsible, let alone that the organization was designated as an FTO as of the date of the Attacks.  The Complaint must be dismissed for this reason.  *See, e.g.*, *Long v. MTN Group Ltd.*, 2025 WL 2827899, at *4 (E.D.N.Y. Sept. 25, 2025) ("To state a claim for JASTA aiding and abetting, [Plaintiffs] must plead … that the act was committed, planned, or authorized by a designated FTO" (cleaned up) and dismissing complaint for failure to plausibly plead a statutory element); *Ashley*, 144 F.4th at 439 n.14 (discussing FTO requirement).

The closest the Complaint comes to alleging the involvement of any organization in the Attacks is the claim that Nael Samarah, who allegedly committed the May 2025 Gez attack, "was

a member of Hamas." Compl. ¶ 155. But that falls decidedly short of alleging that Hamas committed, planned, or authorized the attack, as required by JASTA. And with respect to the March 2016 Force attack, there is no allegation of any organizational affiliation whatsoever. Because the Complaint fails to allege an essential statutory element of its sole claim, it must be dismissed for legal insufficiency.

## II.    The Complaint Does Not Allege—Let Alone Support the Implausible Claim—That Bitter Rivals Hamas and Defendants Were Close Collaborators.

Even assuming the Complaint could be read to allege that Hamas committed, planned, or authorized the Attacks (it cannot), it must still be dismissed. Allegations of collaboration between Defendants and Hamas would not only contravene history, but also **Plaintiff Force's prior allegations regarding the same attack**. Hamas's violent takeover of the Gaza Strip resulted in the murder of countless members of the PA's security forces.[4] Hamas tortures and kills PA employees, including in the time leading up to the attack on Taylor Force.[5] And the PA engages in intelligence and military operations to kill and arrest Hamas-affiliated terrorists.[6] For decades,

---

[4] *Hamas seizes Fatah headquarters in Gaza*, NBC News (June 11, 2007), https://www.nbcnews.com/id/wbna19168118; *Hamas seizes control in Gaza, ousting Fatah*, NY Times (June 15, 2007), https://www.nytimes.com/2007/06/15/world/africa/15iht-mideast.4.6161020.html; *Gaza foes tossed from buildings*, Seattle Times (June 11, 2007), https://www.seattletimes.com/nation-world/gaza-foes-tossed-from-buildings/.

[5] *Human Rights Reports: Israel and the occupied territories*, U.S. State Dep't (May 24, 2012), https://2009-2017.state.gov/j/drl/rls/hrrpt/2011/nea/186430.htm (Hamas "tortured and abused … persons associated with the PA"); *Gaza: Palestinians tortured, summarily killed by Hamas forces during 2014 conflict*, Amnesty Int'l (May 27, 2015), https://www.amnesty.org/en/latest/news/2015/05/gaza-palestinians-tortured-summarily-killed-by-hamas-forces-during-2014-conflict/; *6 Die as Palestinian Authority Forces Clash With Hamas*, NY Times (May 31, 2009), http://www.nytimes.com/2009/06/01/world/middleeast/01mideast.html.

[6] *Israel and Hamas October 2023 Conflict*, No. R47754, Cong. Research Serv. (Oct. 20, 2023), https://www.congress.gov/crs-product/R47754 ("Under Abbas, the PA does not appear to have actively organized or directed violent campaigns targeting Israel or Israelis. The PA and its security forces generally engage in some discreet coordination efforts with Israel to counter shared threats from Hamas..."); *Israel, Golan Heights, West Bank, and Gaza*, U.S. State Dep't,

the United States has supported PA security forces to "counter" Hamas.[7]  Israeli scholars agree that Defendants are highly motivated to defeat Hamas, feeling trapped in a "zero-sum game" against the terrorists.[8]  Israel's security agency, Shin Bet, has explained "Hamas' strategic intentions of toppling the PA" and claims that Israel has stopped "coup" attempts by Hamas against the PA.[9]

Plaintiffs agree.  Mr. Force secured a $6.25 million judgment ($8.07 million with prejudgment interest), as well as a $1.58 million judgment for the Estate of Taylor Force ($1.88 million with prejudgment interest),[10] on the basis that the attack against Taylor Force was a Hamas attack, and Hamas "aims to establish in Israel's place an Islamist state" and "employs a three-pronged strategy to achieve this goal: (1) social welfare activity that builds grassroots support for the organization, (2) political activity **that competes with the secular Palestinian Authority**, and (3) terrorist attacks that target Israeli soldiers and civilians."  *Force*, 464 F. Supp. 3d at 338 (cleaned up; emphasis added) (quoting Plaintiffs' expert).  In fact, Plaintiff Force previously alleged that Defendants used the funeral of the attacker in this case **to strike at Hamas**:

---

https://www.state.gov/report/custom/2750225ce0-2 ("the PA and Hamas arbitrarily arrested each other's supporters solely because of their political affiliation or expression of views").

[7]  *Hamas: Background, Current Status, and U.S. Policy*, No. IF12549, Cong. Research Serv. (Oct. 23, 2024), https://www.congress.gov/crs-product/IF12549 ("The PA has countered Hamas's presence in the West Bank with Israeli and U.S. support. … Since 2006, Congress and the executive branch appear to have structured certain types of U.S. economic and security assistance partly to help the PA counter Hamas.").

[8]  *The Crisis of the Gaza Strip: A Way Out*, Institute for National Security Studies (2018), https://www.inss.org.il/wp-content/uploads/2018/01/GazaCrisis_ENG-41-49.pdf.

[9]  *Israel says it foiled Hamas plan for massive attacks on Israel, coup against PA*, Times of Israel (Aug. 18, 2014), https://www.timesofisrael.com/israel-says-it-foiled-hamas-plan-for-coup-against-pa-in-west-bank/.

[10]  *Force v. Islamic Republic of Iran*, No. 16-cv-01468, Order, ECF No. 129, Ex. A (D.D.C. Aug. 8, 2022).

"Palestinian Authority security forces[] also arrested a number of the funeral's participants as part of a series of arrests of open Hamas supporters." *Id.* at 344 (alteration in original) (quoting Plaintiffs' expert).

In another lawsuit, Plaintiff specifically alleged that Hamas uses terrorism against Israel to undermine the PA and the Oslo Accords: "In its effort to derail the 1993 Oslo Accords that established the Palestinian Authority ('PA') in the mid-1990's, and again during the Second *Intifada* in the mid-2000's, HAMAS carried out scores of suicide bombings against Israel, killing more than a thousand civilians of many nationalities and injuring many thousands." *Force v. Facebook Inc.*, No. 16-05158, Am. Compl., ECF No. 28, ¶ 54 (E.D.N.Y. Oct. 10, 2016). As proof that stabbing attacks were also specifically aimed at Defendants, Plaintiff quoted a Facebook post by a Hamas operative, just two months before the attack on Taylor Force, **stating that one purpose of the spate of stabbing attacks in 2016 was to "rebuff" the Palestinian Authority**. *Id.* ¶ 476. The January 2016 Facebook post boasted about a recent "stabbing operation" and declared: "Once again the sons of #HAMAS rebuff [PA President] Mahmoud Abbas and [PA Intelligence Chief] Majid Faraj in their own way"[11] and "#Uprising_Al-Quds is moving forward and Mahmoud Abbas is barking." *Id.* ¶ 476 (alterations in original). Plaintiff Force also alleged that Hamas had "forcibly seized control of Gaza from the Palestinian Authority" in 2007. *Id.* ¶ 50.

Given these prior conflicting allegations and their success in reliance thereon, Plaintiffs cannot plausibly claim—and indeed, should be judicially estopped from advancing the

---

[11] Majid Faraj was the head of the PA's Intelligence Service, responsible for ensuring security cooperation with Israel. *Palestinian Intel Chief - and Abbas' Potential Successor - Boasts of Efforts to Foil Attacks Against Israel*, Haaretz (Jan. 31, 2016), https://www.haaretz.com/israel-news/2016-01-31/ty-article/.premium/palestinian-intel-chief-boasts-of-efforts-to-foil-anti-israel-attacks/0000017f-db21-d3a5-af7f-fbafbb180000.

position[12]—that Defendants closely collaborated with Hamas on these Attacks or that Defendants "so pervasively and systemically assisted [Hamas] as to render them liable for every [Hamas] attack." *Taamneh*, 598 U.S. at 501, 506; *see infra* at 15-17. The only "support" identified by the Complaint (and as discussed in detail further below) is (1) public criticism of Israeli actions; and (2) payments to families of Palestinians imprisoned or killed in attacks as part of their old social welfare program. Compl. ¶¶ 12-13. The PA and PLO ended that payments program last year.[13]

Importantly, Plaintiffs themselves disclaim the notion that Defendants' support was tied to Hamas or to the Attacks. Instead, Plaintiffs allege that the old payments program paid "salaries and benefits to all prisoners, regardless of need, and that payments should be provided regardless of the terrorist's individual affiliation with particular groups or sects." Compl. ¶ 55 (emphasis added); *see also id.* ¶ 100. These allegations of generally applicable Palestinian government policies—*i.e.,* that the payments program was available to all Palestinians involved in the conflict—undermine any claim Defendants specifically aided Hamas or the Attacks.

For these reasons (taken together with Plaintiff Force's allegations in other cases about the Attack), the Complaint does not plausibly allege that Defendants supported Hamas or facilitated the Attacks. *See Taamneh*, 598 U.S. at 490. Any arguments to the contrary "strain credulity and

---

[12] Judicial estoppel applies where (1) Plaintiffs "advanced an inconsistent factual position in a prior proceeding, and (2) the prior inconsistent position was adopted by the first court in some manner." *AXA Marine & Aviation Ins. (UK) Ltd. v. Seajet Indus. Inc.*, 84 F.3d 622, 628 (2d Cir. 1996); *see also Generali - U.S. Branch v. Genesis Ins. Co.*, 1997 WL 27040, at *1 (S.D.N.Y. Jan. 23, 1997) (same and collecting cases); *Vill. on Canon v. Bankers Tr. Co.*, 1997 WL 47804, at *3 (S.D.N.Y. Feb. 5, 1997) ("Judicial estoppel is invoked in these circumstances to prevent the party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process." (cleaned up)). Both elements are satisfied here.

[13] *Palestinian Authority President Abbas faces backlash over cutting 'pay-for-slay' salaries*, Jerusalem Post (Dec. 25, 2025), https://www.jpost.com/middle-east/article-881359; *Palestinian Authority Sparks Fury by Cutting Prisoner Payments*, Bloomberg (Dec. 31, 2025), https://www.bloomberg.com/news/articles/2025-12-31/palestinian-authority-sparks-fury-by-cutting-prisoner-payments.

are implausible on their face," *Jean-Baptiste v. United States DOJ*, 2023 WL 2648152, at *1 n.1 (S.D.N.Y. Mar. 27, 2023), requiring dismissal. *See Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) (even a "well-pleaded" complaint must be dismissed if it is "fanciful").

### III.   Plaintiffs Fail to State Other Key Elements of an Aiding-And-Abetting Claim.

Two additional independent grounds compel dismissal, although the Court need not consider them in light of Plaintiffs' failure to allege that an FTO committed the Attacks. Plaintiffs' generalized "support" allegations—political speech and the old payments program—fail to satisfy two essential elements of a JASTA aiding-and-abetting claim: that Defendants (1) "knowingly and substantially assist[ed] the principal violation," and (2) were "generally aware" of their role "as part of an overall illegal or tortious activity" at the time of the assistance. *Taamneh*, 598 U.S. at 485-87; *see also Linde v. Arab Bank, PLC*, 882 F.3d 314, 329 (2d Cir. 2018) (same).

#### A.   The Complaint Fails To Show That Defendants Knowingly And Substantially Assisted The Attacks.

Plaintiffs do not plausibly allege that Defendants provided <u>any</u> funds, services, or other assistance—let alone "knowing" and "substantial assistance"—to the terrorists who committed the Attacks, as required by 18 U.S.C. § 2333(d). "JASTA expressly provides that liability only attaches for aiding and abetting <u>a particular terrorist attack</u>." *Ashley*, 144 F.4th at 448 (emphasis added). To state a claim, the Complaint must plausibly allege that Defendants took "some 'affirmative act' 'with the intent of facilitating the [Attacks]'" such that Defendants "consciously, voluntarily, and culpably participate[d] in" the Attacks "so as to help 'make [them] succeed.'" *Taamneh*, 598 U.S. at 489-90, 493-94, 497, 505-06; *id.* at 494 ("the rule imposes liability for a wrong on those who 'hel[p] another to complete <u>its commission</u>'"); *see also Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 291-92 (2025) (same). This is an exacting standard, and purposefully so, as "courts have long recognized the need to cabin aiding-

and-abetting liability to cases of truly culpable conduct." *Taamneh*, 598 U.S. at 489; *see also id.* at 491 (defendant's assistance must "have been calculated and intended to produce" the tort (quotations omitted)).

The post-Attack statements and general payments alleged are insufficient as a matter of law. At best, Plaintiffs allege that Defendants "glorified" the Attacks (Compl. ¶ 132) through statements "on PA-owned and controlled official television, in social media, and on other publicly accessible platforms" (*id.* ¶ 7), but those conclusory general allegations do not plausibly plead "conscious, voluntary, and culpable participation" in the Attacks, as the statute requires. *See Taamneh*, 598 U.S. at 493. And, a "showing of support—even post-attack financial support to the families of terrorists—is not sufficient to demonstrate that Defendants were somehow responsible for the attacks." *Sokolow v. PLO*, 60 F. Supp. 3d 509, 517 n.11 (S.D.N.Y. 2014) (emphasis added); *see also Owens v. BNP Paribas S.A.*, 235 F. Supp. 3d 85, 98 (D.D.C. 2017) (finding "problem[atic]" "facts alleged with respect to defendants' conduct post-date the [attacks]"), *aff'd*, 897 F.3d 266 (D.C. Cir. 2018); *Parizer v. AJP Educ. Found., Inc.*, 2025 WL 2382933, at *19 (E.D. Va. Aug. 15, 2025) (post-attack statements of support "do not support the inference that Defendants' actions specifically assisted with Hamas's October 7, 2023 attack").

Nothing else in the Complaint comes close to plausibly alleging that Defendants "culpably associated" themselves with the Attacks or in any way "'participated in [them] as something that they wished to bring about,' or sought 'by their action to make [the Attacks] succeed.'" *Taamneh*, 598 U.S. at 497-98, 504 (cleaned up); *see also Ashley*, 144 F.4th at 440 (same); *Murad v. Lafarge S.A.*, 2026 WL 270651, at *9 (E.D.N.Y. Jan. 30, 2026) ("[Plaintiffs] cite nothing in their complaint which contends that the Defendants 'wished to bring about' ISIS's attack on the Yazidis, or that they sought through payments and cement provisions 'to make it succeed.'").

"In enacting JASTA, Congress provided additional context by pointing to *Halberstam v. Welch*, 705 F.2d 472 (CADC 1983), as 'provid[ing] the proper legal framework' for 'civil aiding and abetting and conspiracy liability.'" *Taamneh*, 598 U.S. at 485; *see also Ashley*, 144 F.4th at 435 (same).[14]    In *Taamneh*, the Supreme Court applied *Halberstam* to a JASTA aiding-and-abetting claim, and in so doing announced a significantly more stringent standard for pleading the knowing and substantial assistance element.  *Taamneh* expressly distinguished JASTA's two different state-of-mind requirements—the "knowing" element of substantial assistance, and the separate "general awareness" element—and held that the "knowing" provision of substantial assistance is <u>even more demanding</u> than the "general awareness" element.  *Taamneh*, 598 U.S. at 503-04; *see also Ashley*, 144 F.4th at 438 n.12 ("*Twitter* warns that it is inappropriate to collapse the general awareness element into the <u>knowing</u> and substantial assistance element.").  The Court explained that the "'knowing' part of that inquiry is … designed to capture the defendants' state of mind <u>with respect to their actions and the tortious conduct</u> … not the same general awareness that defines *Halberstam*'s second element." *Taamneh*, 598 U.S. at 503-04 (emphasis added).

To satisfy the "knowing" requirement, Defendants must have the "intent of facilitating" the Attacks—a standard that the Complaint does not even come close to satisfying.  *Id.* at 490; *see Long*, 2025 WL 2827899, at *4 (requiring that "defendant acted with the intent of facilitating the offense's commission" (quotations omitted)).  It is not enough for Plaintiffs to allege "knowledge,

---

[14] In *Halberstam*, the D.C. Circuit "identified six factors relevant to determining 'how much encouragement or assistance is substantial enough'" to satisfy the requirement that the defendant "must knowingly and substantially assist the principal violation." *Linde*, 882 F.3d at 329 (quoting *Halberstam*, 705 F.2d at 487).  "Those factors are (1) 'the nature of the act assisted,' (2) the 'amount of assistance' provided, (3) whether the defendant was 'present at the time' of the principal tort, (4) the defendant's 'relation to the tortious actor,' (5) the 'defendant's state of mind,' and (6) the 'duration of the assistance' given." *Taamneh*, 598 U.S. at 486 (quoting *Halberstam*, 705 F.2d at 488).

acquiescence, carelessness, indifference, [or] lack of concern." *Ashley*, 144 F.4th at 443 (citation omitted); *see also Ofisi v. BNP Paribas, S.A.*, 77 F.4th 667, 675 (D.C. Cir. 2023) ("as the Supreme Court recently reiterated, 'the concept of 'helping' in the commission of a crime—or a tort—has never been boundless'" (citation omitted)).  Rather, Plaintiffs must show "interested cooperation, stimulation, instigation." *Ashley*, 144 F.4th at 443.  That requires more than a mere general awareness of terrorist attacks committed by any terrorist, which is all the Complaint alleges.

Moreover, Section 2333(d) requires a plaintiff to plausibly allege a <u>substantial link</u> or a "discernable nexus between [the defendant's assistance] and the attacks committed against Plaintiffs." *Id.* at 444; *Fraenkel v. Standard Chartered Bank*, 2025 WL 2773251, at \*9 (S.D.N.Y. Sept. 26, 2025) (same).  *Taamneh* rejected the Ninth Circuit's "fram[ing of] the issue of substantial assistance as turning on defendants' assistance to ISIS' activities in general" and concluded that the Ninth Circuit erred in focusing "on the value of defendants' platforms <u>to ISIS</u>, rather than whether defendants culpably associated themselves with ISIS' actions." *Taamneh*, 598 U.S. at 503-04; *see also id.* at 501 (rejecting "the expansive scope of plaintiffs' claims" that "[g]iven the lack of any concrete nexus between defendants' services and the [] attack … would necessarily hold defendants liable as having aided and abetted each and every ISIS terrorist act committed anywhere in the world").  "[T]he Supreme Court has held that complaints which are 'devoid of any allegations about how much assistance' a defendant provided to the act of terrorism do not sufficiently allege that the defendant's assistance was substantial." *Long*, 2025 WL 2827899, at \*4.

Under *Taamneh*, the Complaint does not show knowing and substantial assistance to the specific Attacks—particularly where Plaintiffs have repeatedly admitted that Defendants were fighting Hamas.  Plaintiffs previously alleged that outbreak of knife attacks in 2016 were, in part,

aimed at undermining Defendants' legitimacy, and Defendants arrested Hamas supporters that had gathered at the attacker's funeral. *See supra* at 2, 7-8. In contrast, none of the Complaint's 182 paragraphs describes any "support" Defendants provided Hamas. As in *Taamneh*, Plaintiffs have "failed to allege a nexus between the defendants' conduct and the attacks, as JASTA so requires." *Fraenkel*, 2025 WL 2773251, at *8; *see also Murad*, 2026 WL 270651, at *9 ("Put another way, the plaintiffs need to show a 'concrete nexus' between a defendant's conduct and the terrorist acts at issue.").

The Supreme Court explained that "the more attenuated the nexus" between the defendants' alleged conduct and the act of international terrorism at issue, "the more courts should demand that plaintiffs show culpable participation through intentional aid that substantially furthered the tort." *Taamneh*, 598 U.S. at 506; *see also id.* at 503 ("plaintiffs' failure to allege any definable nexus between the defendants' assistance and that attack ... drastically increases their burden to show that defendants somehow consciously and culpably assisted the attack"); *Ashley*, 144 F.4th at 444 ("it is not enough to say that the defendant assisted the terrorist organization's 'activities in general'").

Plaintiffs fail to meet this standard. The assistance alleged by Plaintiffs is extraordinarily attenuated from the Attacks because it is general to all Palestinians. *See, e.g.,* Compl. ¶¶ 7, 55, 100. Plaintiffs here do not plausibly allege a "definable nexus" between any purported support and the Attacks. *Taamneh* instructs that the "focus must remain on assistance to the tort," which Plaintiffs all but ignore. *Taamneh*, 598 U.S. at 505-06; *see also Ashley*, 144 F.4th at 448 (same). In other words, *Taamneh* "directs courts to focus on the defendant's actions vis-à-vis the specific attack that injured the plaintiffs." *Bonacasa v. Standard Chartered PLC*, 2023 WL 7110774, at *9 (S.D.N.Y. Oct. 27, 2023); *id.* at *7 ("[I]t is not enough to generally assist the terrorist

organization without consideration of the specific attack that injured plaintiffs.  Thus, the *Twitter* plaintiffs could have stated a claim if they plausibly alleged that defendants aided and abetted ISIS in carrying out the Reina attack." (emphasis added)).

Significantly, it "is not enough" if Defendants gave "substantial assistance to a transcendent 'enterprise' separate from and floating above all the actionable wrongs that constitute it." *Taamneh*, 598 U.S. at 495; *Ashley*, 144 F.4th at 448 (same); *see also Smith & Wesson*, 605 U.S. at 294 (a complaint must "pinpoint, as most aiding-and-abetting claims do, a[] specific criminal transaction[] that the defendants (allegedly) assisted").  Plaintiffs have not identified any contemporaneous assistance provided by Defendants to the Attacks.  None of the pre-Attack allegations, which consist of the existence of the old payments program and political statements against the Israeli occupation, meet this standard.  *See Long*, 2025 WL 2827899, at *5 ("none of these specific factual allegations connect IRGC's provision of resources to his kidnapping, let alone connect MTN's aid of the IRGC to the kidnapping"); *Parizer*, 2025 WL 2382933, at *18 ("Plaintiffs do not plead specific facts adequate to 'draw a sufficient connection between the cause of action Plaintiffs seek—aiding and abetting Hamas's October 7, 2023 attack overseas—and Defendants' domestic conduct.'" (cleaned up)); *Fraenkel*, 2025 WL 2773251, at *9 (the "nexus between" the "laundering of money for customers connected to Iran or Iran's Terrorist Sponsors" and "the Attacks is too attenuated to give rise to JASTA liability here"); *Smith & Wesson*, 605 U.S. at 295 ("[W]e cannot take the allegation here at face value, because [the plaintiff] has not said enough to make it plausible.").

Critically, Plaintiffs' theory is not logically limited to the Attacks, or even to Hamas, but instead would hold Defendants liable for all attacks committed anywhere by any Palestinian.  Toward that end, Plaintiffs claim that "[y]ears of incitement to hate and murder, glorifying

murderers, and celebrating terror attacks by the Defendants, together with Defendants' perverse terror reward system, serve as the predicate for this suit." Compl. ¶ 33; *see also id.* ¶¶ 33-34 (claiming that "Defendants PLO and PA have openly celebrated and rewarded acts of terrorism against civilians in Israel" since the PLO's founding in 1964). And Plaintiffs claim that Defendants, through their old payments program, "do not discriminate based on a terrorist's affiliation." *Id.* ¶ 100. Defendants, therefore, provide payments "regardless of the terrorist's individual affiliation with particular groups or sects" and "whether an individual terrorist is a member of Hamas, Palestinian Islamic Jihad ("PIJ"), Fatah, PFLP, or any other group is of no moments to Defendants." *Id.* ¶ 55.

A recent holding explains why allegations of general support require heightened allegations of intentionality under *Taamneh*: "Plaintiffs' claims would necessarily hold defendants liable as having aided and abetted each and every terrorist act committed by [Hamas, the PIJ, Fatah, or PFLP] anywhere in the world. Under those circumstances, Plaintiffs thus must allege that Defendant so systematically and pervasively assisted the terrorist organization that Defendant could be said to aid and abet every single attack by that organization." *Lavi v. UNRWA USA Nat'l Comm., Inc.*, 2025 WL 2300038, at \*7 (D. Del. Aug. 8, 2025) (cleaned up and quoting *Taamneh*, 598 U.S. at 501). The Supreme Court emphasizes that such allegations of broad liability present an exceptionally "high bar." *Smith & Wesson*, 605 U.S. at 294. "Viewed in that light, the allegations here certainly fall short." *Lavi*, 2025 WL 2300038, at \*7.

In the end, the allegations—of generally-applicable payment programs and public statements—are too general and conclusory to plausibly show "knowing" or "substantial" support for the specific Attacks, let alone systemic and pervasive support for Hamas. *See Fraenkel*, 2025 WL 2773251, at \*10 ("Plaintiffs' theory of liability would 'hold [bank] liable for all the torts of

an enterprise,' but without the corresponding 'pervasive and systemic' support of terroristic activities that *Twitter* demands."); *see also Murad*, 2026 WL 270651, at \*9 ("The *Murad* Plaintiffs' complaint contains only 'conclusory allegations offered without factual support to show systematic assistance to ISIS.'  Thus, it demonstrates no 'concrete nexus' between the Defendants' actions and the Yazidi attacks." (cleaned up)).

Finally, the D.C. Circuit's recent decision in *Atchley v. AstraZeneca UK Limited*, 2026 WL 184415 (D.C. Cir. Jan. 23, 2026), does not change this analysis.  First, *Atchley* is distinguishable on its facts.  The plaintiffs there alleged that the defendants maintained an "active, direct, and particularized" relationship **with the terrorist organization responsible for the attacks**, which included "bespoke dealings" and "highly irregular and illegal" bribe payments that were directly "used to fund" the terrorist group and its "numerous attacks on the victims."  *Id.* at \*3, \*13. Second, the defendants altered their usual business practices specifically to accommodate and assist the terrorist organization.  *Id*. at \*3, \*12-13.  Here, Plaintiffs fail to even identify the FTO, much less allege a close relationship between Hamas and Defendants.  In the end, Plaintiffs fail to allege that Defendants provided <u>any</u> funds, services, or other assistance—let alone "knowing" and "substantial assistance"—to the terrorists (or terrorist organization) who committed the Attacks, as required by § 2333(d)(2).

### B. The Complaint Fails To Show That Defendants Were "Generally Aware" They Were Assuming A Role In Terrorist Activity.

Plaintiffs equally fail to satisfy the separate "general awareness" element that JASTA requires, although the Court need not reach this element, given Plaintiffs' failure to plead both the more demanding "knowing" requirement and FTO involvement in the Attacks.  *See Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 870 (D.C. Cir. 2022).  The Complaint does not plausibly

allege that Defendants were "aware" that they were assuming a "role" in terrorist activity, independently requiring dismissal. *Taamneh*, 598 U.S. at 486-87.

Secondary liability under JASTA requires the defendant to be "generally aware of his role as part of an overall illegal or tortious activity at the time he provides the assistance." *Id.* at 486. In other words, secondary liability "requires the secondary actor"—here, the PA and PLO—"to be 'aware' that, by assisting the principal, [they were themselves] assuming a 'role' in terrorist activities" and that the intent of those activities "was to intimidate or coerce civilians or to affect a government." *Linde*, 882 F.3d at 329-30.

For a showing of general awareness, "[i]t is not enough for a defendant to be aware 'of the organization's connection to terrorism[,]'" "[n]or is it even sufficient for a defendant to knowingly violate laws which were designed to prevent terrorist activity." *Wildman v. Deutsche Bank Aktiengesellschaft*, 2022 WL 17993076, at \*7 (E.D.N.Y. Dec. 29, 2022), *aff'd sub nom. Ashley*, 144 F.4th 420; *Honickman v. BLOM Bank SAL*, 6 F.4th 487, 498-99 (2d Cir. 2021) (rejecting argument that, because "[m]oney is fungible," JASTA aiding-and-abetting liability can be premised solely on knowing and material support to an FTO); *Ashley*, 144 F.4th at 444 (rejecting "theory [of liability] based on money's fungibility").

Plaintiffs have failed to allege that Defendants' provision of the alleged support would have made Defendants "aware" that they were playing a "role" in the Attackers' terrorist activities. *See Honickman*, 6 F.4th at 496 (requiring a showing that Defendants "must be generally aware of [their] role in an overall illegal activity from which the act that caused the plaintiff's injury was foreseeable"). Indeed, the Complaint fails to draw any concrete link whatsoever between terrorist activity and the support allegedly provided by Defendants. To the contrary, Defendants as governmental entities "invariably maintain legitimate government activities," *Bernhardt*, 47 F.4th

- 18 -

at 868, including the provision of welfare programs and funding public services like media and education, none of which would make Defendants "aware" that they were playing a "role" in any terrorist activities.  The Complaint must be dismissed.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.


Dated: February 9, 2026                    Respectfully Submitted,

**SQUIRE PATTON BOGGS (US) LLP**

*/s/Gassan A. Baloul*

Gassan A. Baloul
gassan.baloul@squirepb.com
Mitchell R. Berger
mitchell.berger@squirepb.com

2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile:  (202) 457-6315

*Attorneys for Defendants*

CERTIFICATE OF SERVICE

Gassan A. Baloul, an attorney duly admitted to practice before this Court, certifies that on February 9, 2026, I caused true and correct copies of the foregoing to be served on Plaintiffs' counsel of record via electronic filing on the Court's CM/ECF system.

Dated:  February 9, 2026

                                        _/s/ Gassan A. Baloul_____
                                        Gassan A. Baloul