**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

STUART FORCE, individually and as the personal
representative of the Estate of TAYLOR FORCE,
and HANANEL GEZ,

                             Plaintiffs,

v.

THE PALESTINIAN AUTHORITY and
THE PALESTINE LIBERATION
ORGANIZATION,

                             Defendants.

Case No. 25-cv-08582-CM

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**SQUIRE PATTON BOGGS (US) LLP**
Gassan A. Baloul
Mitchell R. Berger
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

*Attorneys for Defendants*

May 1, 2026

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT ............................................................................................................................ 5

I.  Plaintiffs Do Not, and Cannot, Support the Implausible Claim that
Defendants and Their Bitter Rival, Hamas, Were Close Collaborators. ............... 5

II.  Plaintiffs Fail to Plausibly Plead that Defendants Knowingly and
Substantially Assisted the Attacks. ....................................................................... 9

A.  Plaintiffs Fail to Allege that Defendants Provided *Any* Assistance
to Hamas or the Attacks, Let Alone Knowing and Substantial
Assistance. ........................................................................................... 11

B.  Plaintiffs Fail to Show "Pervasive and Systemic" Support
Sufficient to Hold Defendants Secondarily Liable. ................................ 15

III.  The FAC Fails to Plausibly Plead that Defendants Were "Generally
Aware" They Were Assuming a Role in Terrorist Activity. ............................... 18

CONCLUSION ...................................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashley v. Deutsche Bank Aktiengesellschaft*,
144 F.4th 420 (2d Cir. 2025) ..................................................................................... *passim*

*Atchley v. AstraZeneca UK Ltd.*,
165 F.4th 592 (D.C. Cir. 2026) .................................................................................14

*AXA Marine & Aviation Ins. (UK) Ltd. v. Seajet Indus. Inc.*,
84 F.3d 622 (2d Cir. 1996) .........................................................................................8

*Bernhardt v. Islamic Republic of Iran*,
47 F.4th 856 (D.C. Cir. 2022) .............................................................................18, 19

*Bonacasa v. Standard Chartered PLC*,
2023 WL 7110774 (S.D.N.Y. Oct. 27, 2023) ..........................................................13

*Clark v. Kitt*,
2014 WL 4054284 (S.D.N.Y. Aug. 15, 2014) ....................................................... 1-2

*Cox Commc'ns, Inc. v. Sony Music Ent.*,
146 S. Ct. 959 (2026) ...............................................................................................11

*Force v. Islamic Republic of Iran*,
464 F. Supp. 3d 323 (D.D.C. 2020) .......................................................................2, 6

*Fraenkel v. Standard Chartered Bank*,
2025 WL 2773251 (S.D.N.Y. Sept. 26, 2025) .............................................13, 14, 15

*Freeman v. HSBC Holdings PLC*,
2026 WL 880107 (E.D.N.Y. Mar. 31, 2026) ...............................................14, 15, 18

*Gallop v. Cheney*,
642 F.3d 364 (2d Cir. 2011) .......................................................................................9

*Generali - U.S. Branch v. Genesis Ins. Co.*,
1997 WL 27040 (S.D.N.Y. Jan. 23, 1997) .................................................................8

*Gilmore v. Palestinian Interim Self-Gov't Auth.*,
843 F.3d 958 (D.C. Cir. 2016) ...................................................................................3

*Graham v. UMG Recordings, Inc.*,
806 F. Supp. 3d 454 (S.D.N.Y. 2025) ........................................................................2

*Halberstam v. Welch*,
    705 F.2d 472 (D.C. Cir. 1983) ........................................................................... 9-10

*Hirsch v. Arthur Andersen & Co.*,
    72 F.3d 1085 (2d Cir. 1995) .................................................................................... 9

*Honickman v. BLOM Bank SAL*,
    6 F.4th 487 (2d Cir. 2021) ............................................................................... 18, 19

*In re Livent, Inc. Noteholders Secs. Litig.*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001) ..................................................................... 5

*Jean-Baptiste v. U.S. DOJ*,
    2023 WL 2648152 (S.D.N.Y. Mar. 27, 2023) ......................................................... 9

*Jeffery v. City of New York*,
    113 F.4th 176 (2d Cir. 2024) ................................................................................... 2

*Kramer v. Time Warner Inc.*,
    937 F.2d 767 (2d Cir. 1991) .................................................................................... 1

*Lavi v. UNRWA USA Nat'l Comm., Inc.*,
    2025 WL 2300038 (D. Del. Aug. 8, 2025) ...................................................... 16, 17

*Linde v. Arab Bank, PLC*,
    882 F.3d 314 (2d Cir. 2018) ............................................................................. 9, 18

*Long v. MTN Grp. Ltd.*,
    2025 WL 2827899 (E.D.N.Y. Sept. 25, 2025) ................................................ 11, 13

*Murad v. Lafarge S.A.*,
    2026 WL 270651 (E.D.N.Y. Jan. 30, 2026) ................................................... 12, 15

*Ofisi v. BNP Paribas, S.A.*,
    77 F.4th 667 (D.C. Cir. 2023) ............................................................................... 11

*Owens v. BNP Paribas S.A.*,
    235 F. Supp. 3d 85 (D.D.C. 2017) ....................................................................... 12

*Parizer v. AJP Educ. Found., Inc.*,
    2025 WL 2382933 (E.D. Va. Aug. 15, 2025) ................................................. 12, 14

*Shatsky v. PLO*,
    2017 WL 2666111 (D.D.C. June 20, 2017) ............................................................ 3

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*,
    605 U.S. 280 (2025) ................................................................................ 10-11, 15, 17

*Sokolow v. PLO*,
    60 F. Supp. 3d 509 (S.D.N.Y. 2014)........................................................................12

*Troell v. Binance Holdings Ltd.*,
    2026 WL 636849 (S.D.N.Y. Mar. 6, 2026) ....................................................15, 16

*Twitter, Inc. v. Taamneh*,
    598 U.S. 471 (2023).............................................................................. *passim*

*Vill. on Canon v. Bankers Tr. Co.*,
    1997 WL 47804 (S.D.N.Y. Feb. 5, 1997)..................................................................8

*Wildman v. Deutsche Bank Aktiengesellschaft*,
    2022 WL 17993076 (E.D.N.Y. Dec. 29, 2022) ......................................................18

**Statutes**

Justice Against Sponsors of Terrorism Act ("JASTA"),
    18 U.S.C. § 2333 ..................................................................................... *passim*

18 U.S.C. § 2339A...........................................................................................................2

18 U.S.C. § 2339B...........................................................................................................2

**Other Authorities**

*6 Die as Palestinian Authority Forces Clash With Hamas*,
    NY Times (May 31, 2009)............................................................................................6

*Gaza foes tossed from buildings*,
    Seattle Times (June 11, 2007).....................................................................................5

*Gaza: Palestinians tortured, summarily killed by Hamas forces during 2014 conflict*,
    Amnesty Int'l (May 27, 2015) ............................................................................... 5-6

*Force v. Facebook Inc.*, No. 16-cv-05158, Am. Compl., ECF No. 28
    (E.D.N.Y. Oct. 10, 2016)..............................................................................................7

*Hamas: Background, Current Status, and U.S. Policy*,
    No. IF12549, Cong. Rsch. Serv. (Oct. 23, 2024)......................................................6

*Hamas seizes control in Gaza, ousting Fatah*,
    NY Times (June 15, 2007)...........................................................................................5

*Hamas seizes Fatah headquarters in Gaza*,
    NBC News (June 11, 2007) .........................................................................................5

*Human Rights Reports: Israel and the occupied territories*,
    U.S. State Dep't (May 24, 2012) ................................................................................5

*Israel and Hamas October 2023 Conflict*,
No. R47754, Cong. Rsch. Serv. (Oct. 20, 2023)..........................................................................6

*Israel, Golan Heights, West Bank, and Gaza*,
U.S. State Dep't .........................................................................................................................6

*Israel says it foiled Hamas plan for massive attacks on Israel, coup against PA*,
Times of Israel (Aug. 18, 2014)................................................................................................6

*Palestinian Intel Chief - and Abbas' Potential Successor - Boasts of Efforts to
Foil Attacks Against Israel*, Haaretz (Jan. 31, 2016) ...............................................................7

*The Crisis of the Gaza Strip: A Way Out*,
Inst. for Nat'l Sec. Studies (2018) ............................................................................................6

## PRELIMINARY STATEMENT

This case should be dismissed with prejudice because Plaintiffs do not, and cannot, plausibly allege essential elements of their sole claim—aiding and abetting under the Justice Against Sponsors of Terrorism Act ("JASTA"), 18 U.S.C. § 2333(d). After failing to allege in their initial Complaint even the threshold element that the attacks at issue were committed, planned, or authorized by a foreign terrorist organization, Plaintiffs amended their pleading to assert that Hamas—Defendants' avowed enemy—was responsible for the attacks. *See* First Am. Compl., ECF No. 30 ("FAC") ¶ 184.

As amended, Plaintiffs' claim now squarely rests on the wholly implausible theory that Defendants are so "fundamentally united" with Hamas—an organization Plaintiffs concede "has been vying for decades to replace Defendants" and regularly kills Defendants' employees—that Defendants aided and abetted not just the March 2016 attack on Taylor Force and the May 2025 attack on the Gez family (the "Attacks"), but **every other Hamas attack as well**. *Id.* ¶¶ 58-59, 203. Hamas opposes everything Defendants represent, including the two-state solution, security cooperation with Israel, and the Oslo Accords. Plaintiffs brush away this fact as a "surface-level distinction[]" (*id.* ¶ 59), but Defendants' ongoing, violent conflict with Hamas, which has persisted for decades, is the exact opposite of the kind of near-common enterprise necessary to support Defendants' broad liability for Hamas attacks under Supreme Court precedent.

The implausibility of these claims is highlighted by Plaintiffs' conflicting allegations in other lawsuits.[1] Plaintiff Force has repeatedly (and correctly) admitted that Hamas is in armed

---

[1] The Court can take judicial notice of the allegations in these other lawsuits, one of which Plaintiffs reference in their FAC, as well as the public sources cited below. *See* FAC ¶ 152 & n.99; *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts … to establish the fact of such litigation and related filings."); *Clark v. Kitt*, 2014 WL 4054284, at *8 (S.D.N.Y. Aug. 15, 2014) ("[T]he Court can take judicial notice of these litigation documents … to establish the existence of the prior litigation,

conflict with Defendants, including overthrowing Defendants in Gaza and conducting terrorist attacks—specifically including the attack on Taylor Force—in order to <u>undermine</u> Defendants. *See infra* § I.  In fact, Plaintiff Force convinced another court that Palestinian Authority forces interrupted the funeral for the Hamas terrorist that killed Taylor Force to round up and arrest other Hamas supporters in attendance.  *See Force v. Islamic Republic of Iran*, 464 F. Supp. 3d 323, 335, 344 (D.D.C. 2020).  Yet Plaintiffs now reverse course and claim that Defendants aided and abetted Hamas in the commission of the very same attack (in addition to every other Hamas attack ever committed).  *See* FAC ¶¶ 182-87; *see also id.* ¶¶ 12, 18, 59, 67, 107, 119.  This case must be dismissed with prejudice because it hinges on the impossible idea that Defendants worked hand-in-glove with Hamas.

The lawsuit also must be dismissed for the independent reason that Plaintiffs have not tied (and cannot tie) Defendants to Hamas, let alone the Attacks.  Instead, Plaintiffs' single count[2] relies on generic allegations of generally applicable Palestinian governmental action (or inaction) entirely unrelated to Hamas and the Attacks: that Defendants made payments to "Palestinians who are imprisoned or injured—or to their families if they were killed" and "celebrated Palestinian

---

what claims were asserted, and what issues were argued and decided."), *aff'd*, 619 F. App'x 34 (2d Cir. 2015); *see also Jeffery v. City of New York*, 113 F.4th 176, 179 (2d Cir. 2024) ("We take judicial notice of media reports insofar as they detail widely documented events that plaintiffs themselves reference or generally acknowledge in their pleadings."); *Graham v. UMG Recordings, Inc.*, 806 F. Supp. 3d 454, 472 (S.D.N.Y. 2025) ("In deciding this motion to dismiss, the Court need not blind itself to the public attention garnered by this particular rap battle.  The Court takes judicial notice of the extensive mainstream media reporting that surrounded the release of 'Not Like Us' and the associated feud between Drake and Lamar.").

[2] The FAC also alleges that the support allegedly provided by Defendants "also satisf[ies] the Antiterrorism Act's criminalization of providing 'material support or resources' to a Foreign Terrorist Organization.  *See* 18 U.S.C. §§ 2339A and 2339B."  FAC ¶ 202.  However, because Plaintiffs do not (and could not) assert a primary-liability material support claim under 18 U.S.C. §§ 2339A or 2339B, Defendants—while reserving all rights—do not address those statutory elements, or why Plaintiffs' allegations fall far short of satisfying them.

terrorists and terrorism, including in PA Ministry of Education schools, on PA-owned and controlled official television, in social media, and on other publicly accessible platforms." *Id.* ¶¶ 4, 7. Even if Plaintiffs' incredible claim that the PA dictates everything said by Palestinian media and clerics were taken as true on a motion to dismiss, such allegations about Defendants' general role in the Israeli-Palestinian conflict are insufficient to support Plaintiffs' claim that Defendants aided and abetted Hamas in the Attacks.

Because Plaintiffs do not plausibly allege that Defendants consciously and culpably took actions to facilitate the Attacks, their secondary-liability claim fails. Dismissal of Anti-Terrorism Act ("ATA") claims is appropriate in cases where, as here, Plaintiffs fail to connect Defendants' alleged facilitative actions to the Attacks. For example, in *Shatsky*, the court held that Defendants' alleged financial support for a Palestinian political faction—the Popular Front for the Liberation of Palestine ("PFLP") (a Marxist political party), by paying rent for a regional office—was unmoored from the attack at issue there because "no reasonable jury could find that the PLO's payment of rent [for the PFLP] … 'caused' the bombing." *Shatsky v. PLO*, 2017 WL 2666111, at *9 (D.D.C. June 20, 2017), *vacated on other grounds*, 955 F.3d 1016 (D.C. Cir. 2020). Moreover, "after-the-fact payments [to the family of an attacker of the type alleged here] are not sufficient for a reasonable jury to conclude that defendants" were liable for an attack. *Id*. at *10. The D.C. Circuit reached the same conclusion in *Gilmore v. Palestinian Interim Self-Gov't Auth*., 843 F.3d 958, 972-73 (D.C. Cir. 2016), dismissing a case for failure to connect Defendants' actions to the attack at issue.

The Supreme Court endorsed this reasoning in *Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023), explaining that generic assistance to a foreign terrorist organization ("FTO") does not create liability <u>unless the plaintiff can connect the support to the attack at issue</u>. *See id*. at 481,

- 3 -

498, 500.  Critical to this motion, "it is not enough … that a defendant have given substantial assistance to a transcendent 'enterprise' separate from and floating above all the actionable wrongs that constitute it."  *Id*. at 495.  Instead, an ATA secondary-liability claim under JASTA requires specific allegations that a defendant "knowingly provid[ed] substantial assistance … in the commission of the actionable wrong—here, an act of international terrorism."  *Id*.; *accord Ashley v. Deutsche Bank Aktiengesellschaft*, 144 F.4th 420, 448 (2d Cir. 2025).  Plaintiffs have failed to allege <u>any</u> assistance to Hamas, let alone any assistance that would be sufficient to connect the alleged support to the Attacks.

Instead, Plaintiffs advance a boundless theory of liability that only reinforces their inability to plausibly state a secondary-liability claim.  *Taamneh* emphasized the heightened burden plaintiffs face where the "expansive scope" of their "claims would necessarily hold defendants liable as having aided and abetted each and every" attack perpetrated by an FTO.  598 U.S. at 501.  Plaintiffs here press the sweeping theory that Defendants "aid[ed] and abett[ed] thousands of terrorists" and "acts of international terrorism" committed by several alleged FTOs.  FAC ¶¶ 201, 203.  And Plaintiffs repeatedly allege that Defendants, far from intending to support Hamas, made payments "<u>regardless</u> of the terrorist's individual affiliation with particular groups or sects."  *Id.* ¶¶ 67, 107, 119 (emphasis added).  Plaintiffs' allegations of generalized support to Palestinians writ large does not satisfy *Taamneh*'s requirement that Plaintiffs show "pervasive, systemic, and culpable assistance" to Hamas, "as their theory of liability requires."  598 U.S. at 502, 506.  This is an exceptionally "high bar," *Ashley*, 144 F.4th at 445, that Plaintiffs cannot meet.

All told, Plaintiffs fail to plausibly plead their JASTA aiding-and-abetting claim under *Taamneh* and its progeny because the alleged "support" shows neither "conscious, voluntary, and culpable participation" in the Attacks nor an "'affirmative act' 'with the intent of facilitating'" the

Attacks. *Taamneh*, 598 U.S. at 490, 493; *see also Ashley*, 144 F.4th at 436, 440 (same). Plaintiffs'

claim that Defendants aided and abetted their bitter rival is wholly implausible, and dismissal with

prejudice is appropriate.

**ARGUMENT**

**I.      Plaintiffs Do Not, and Cannot, Support the Implausible Claim that Defendants and
Their Bitter Rival, Hamas, Were Close Collaborators.**

Plaintiffs' own allegations illustrate the implausibility of their claim that Defendants

"facilitated" and "sponsored" the Hamas Attacks. FAC ¶ 202. Plaintiffs explicitly concede that

Hamas is "the PA's rival" that "has been vying for decades to replace Defendants." *Id.* ¶ 58.

Plaintiffs nonetheless insist that Defendants and Hamas are so "fundamentally united" that

Defendants aided and abetted not just the Attacks at issue, but "thousands of" Hamas and other

terrorist attacks. *Id.* ¶¶ 59, 182, 203. That cannot plausibly be so, and the "[C]ourt need not feel

constrained to accept as truth [these] conflicting pleadings that make no sense … or that are

contradicted either by statements in the complaint itself or … by facts of which the court may take

judicial notice." *In re Livent, Inc. Noteholders Secs. Litig.*, 151 F. Supp. 2d 371, 405-06 (S.D.N.Y.

2001). The FAC's allegations contravene not only undisputed history, but also **Plaintiff Force's**

**prior allegations regarding the same attack**.

Start with undisputed history. Hamas's violent takeover of the Gaza Strip resulted in the

murder of countless members of the PA's security forces.[3] Hamas tortures and kills PA employees,

including in the time leading up to the attack on Taylor Force.[4] And the PA engages in intelligence

---

[3] *Hamas seizes Fatah headquarters in Gaza*, NBC News (June 11, 2007), https://www.nbcnews.com/id/wbna19168118; *Hamas seizes control in Gaza, ousting Fatah*, NY Times (June 15, 2007), https://www.nytimes.com/2007/06/15/world/africa/15iht-mideast.4.6161020.html; *Gaza foes tossed from buildings*, Seattle Times (June 11, 2007), https://www.seattletimes.com/nation-world/gaza-foes-tossed-from-buildings/.

[4] *Human Rights Reports: Israel and the occupied territories*, U.S. State Dep't (May 24, 2012), https://2009-2017.state.gov/j/drl/rls/hrrpt/2011/nea/186430.htm (Hamas "tortured and abused …

and military operations to kill and arrest Hamas-affiliated terrorists.[5] For decades, the United States has supported PA security forces to "counter" Hamas.[6] Israeli scholars agree that Defendants are highly motivated to defeat Hamas, feeling trapped in a "zero-sum game" against the terrorists.[7] Israel's security agency, Shin Bet, has explained "Hamas' strategic intentions of toppling the PA" and claims that Israel has stopped "coup" attempts by Hamas against the PA.[8]

Plaintiffs' prior allegations prove this point. Mr. Force and Taylor Force's estate have secured over $10 million in judgments[9] on the basis that the attack against Taylor Force was a Hamas attack, and Hamas "aims to establish in Israel's place an Islamist state" and "employs a three-pronged strategy to achieve this goal" that includes "political activity **that competes with the secular Palestinian Authority**" and "terrorist attacks that target Israeli soldiers and civilians."

---

persons associated with the PA"); *Gaza: Palestinians tortured, summarily killed by Hamas forces during 2014 conflict*, Amnesty Int'l (May 27, 2015), https://www.amnesty.org/en/latest/news/2015/05/gaza-palestinians-tortured-summarily-killed-by-hamas-forces-during-2014-conflict/; *6 Die as Palestinian Authority Forces Clash With Hamas*, NY Times (May 31, 2009), http://www.nytimes.com/2009/06/01/world/middleeast/01mideast.html.

[5] *Israel and Hamas October 2023 Conflict*, No. R47754, Cong. Rsch. Serv. (Oct. 20, 2023), https://www.congress.gov/crs-product/R47754 ("Under Abbas, the PA does not appear to have actively organized or directed violent campaigns targeting Israel or Israelis. The PA and its security forces generally engage in some discreet coordination efforts with Israel to counter shared threats from Hamas...."); *Israel, Golan Heights, West Bank, and Gaza*, U.S. State Dep't, https://www.state.gov/report/custom/2750225ce0-2 ("[T]he PA and Hamas arbitrarily arrested each other's supporters solely because of their political affiliation or expression of views.").

[6] *Hamas: Background, Current Status, and U.S. Policy*, No. IF12549, Cong. Rsch. Serv. (Oct. 23, 2024), https://www.congress.gov/crs-product/IF12549 ("The PA has countered Hamas's presence in the West Bank with Israeli and U.S. support.... Since 2006, Congress and the executive branch appear to have structured certain types of U.S. economic and security assistance partly to help the PA counter Hamas.").

[7] *The Crisis of the Gaza Strip: A Way Out*, Inst. for Nat'l Sec. Studies (2018), https://www.inss.org.il/wp-content/uploads/2018/01/GazaCrisis_ENG-41-49.pdf.

[8] *Israel says it foiled Hamas plan for massive attacks on Israel, coup against PA*, Times of Israel (Aug. 18, 2014), https://www.timesofisrael.com/israel-says-it-foiled-hamas-plan-for-coup-against-pa-in-west-bank/.

[9] *Force v. Islamic Republic of Iran*, No. 16-cv-01468, Order, ECF No. 129 (D.D.C. Aug. 8, 2022).

*Force*, 464 F. Supp. 3d at 338 (cleaned up; emphasis added) (quoting Plaintiffs' expert).  In fact, Plaintiff Force also alleged that Defendants used the funeral of the attacker in this case **to strike at Hamas**: "Palestinian Authority security forces[] also arrested a number of the funeral's participants as part of a series of arrests of open Hamas supporters."  *Id.* at 344 (alteration in original) (quoting Plaintiffs' expert).

In another lawsuit, Plaintiff specifically alleged that Hamas uses terrorism against Israel to undermine the PA and the Oslo Accords: "In its effort to derail the 1993 Oslo Accords that established the [PA] in the mid-1990's, and again during the Second *Intifada* in the mid-2000's, HAMAS carried out scores of suicide bombings against Israel, killing more than a thousand civilians of many nationalities and injuring many thousands."  *Force v. Facebook Inc.*, No. 16-cv-05158, Am. Compl., ECF No. 28, ¶ 54 (E.D.N.Y. Oct. 10, 2016).  As proof that stabbing attacks were also specifically aimed at Defendants, Plaintiff quoted a Facebook post by a Hamas operative, just two months before the attack on Taylor Force, **stating that one purpose of the spate of Hamas stabbing attacks in 2016 was to "rebuff" the Palestinian Authority**.  *Id.* ¶ 476.  The January 2016 Facebook post boasted about a recent "stabbing operation" and declared: "Once again the sons of #HAMAS rebuff [PA President] Mahmoud Abbas and [PA Intelligence Chief] Majid Faraj in their own way"[10] and "#Uprising_Al-Quds is moving forward and Mahmoud Abbas is barking."  *Id.* (alterations in original).  Plaintiff Force also alleged that Hamas had "forcibly seized control of Gaza from the Palestinian Authority" in 2007.  *Id*. ¶ 50.

---

[10] Majid Faraj was the head of the PA's Intelligence Service, responsible for ensuring security cooperation with Israel.  *Palestinian Intel Chief - and Abbas' Potential Successor - Boasts of Efforts to Foil Attacks Against Israel*, Haaretz (Jan. 31, 2016), https://www.haaretz.com/israel-news/2016-01-31/ty-article/.premium/palestinian-intel-chief-boasts-of-efforts-to-foil-anti-israel-attacks/0000017f-db21-d3a5-af7f-fbafbb180000.

This lawsuit should be dismissed given these prior successful allegations that Hamas intended the Force attack as also a strike against Defendants, and that Defendants used the funeral of the Force attacker to strike back against Hamas.  Plaintiffs cannot plausibly now claim the opposite—and indeed, should be judicially estopped from advancing the position[11]—that Defendants closely collaborated with Hamas on these Attacks or that Defendants "so pervasively and systemically assisted [Hamas] as to render them liable for every [Hamas] attack."  *Taamneh*, 598 U.S. at 501, 506; *see infra* § II.B.  The only "support" identified by the FAC (and as discussed in detail further below) is (1) public criticism of Israeli actions; and (2) payments to families of Palestinians imprisoned or killed in attacks as part of a social welfare program.  FAC ¶¶ 13, 18.

Importantly, Plaintiffs themselves disclaim the notion that Defendants' alleged support was tied to Hamas or to the Attacks.  Instead, Plaintiffs allege that the payments program paid "salaries and benefits to all prisoners, regardless of need, and that payments should be provided <u>regardless of the terrorist's individual affiliation with particular groups or sects</u>."  FAC ¶ 67 (emphasis added); *see also id.* ¶¶ 107, 119.  These allegations of generally applicable Palestinian government policies—*i.e.*, that the payments program was available to all Palestinians involved in the conflict—undermine any claim Defendants specifically aided Hamas or the Attacks, as is required for an aiding-and-abetting claim.  *See infra* §§ II-III.

---

[11] Judicial estoppel applies where, as here, (1) Plaintiffs "advanced an inconsistent factual position in a prior proceeding, and (2) the prior inconsistent position was adopted by the first court in some manner."  *AXA Marine & Aviation Ins. (UK) Ltd. v. Seajet Indus. Inc.*, 84 F.3d 622, 628 (2d Cir. 1996); *see also Generali - U.S. Branch v. Genesis Ins. Co.*, 1997 WL 27040, at *1 (S.D.N.Y. Jan. 23, 1997) (same and collecting cases); *Vill. on Canon v. Bankers Tr. Co.*, 1997 WL 47804, at *3 (S.D.N.Y. Feb. 5, 1997) ("Judicial estoppel is invoked in these circumstances to prevent the party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process." (cleaned up)).

For these reasons, the FAC does not plausibly allege that Defendants supported Hamas or facilitated the Attacks. *See Taamneh*, 598 U.S. at 490. Any arguments to the contrary "strain credulity and are implausible on their face," *Jean-Baptiste v. U.S. DOJ*, 2023 WL 2648152, at *1 n.1 (S.D.N.Y. Mar. 27, 2023), requiring dismissal. *See Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) (even a "well-pleaded" complaint must be dismissed if it is "fanciful"); *see, e.g., Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995) (sustaining complaint's dismissal where "attenuated allegations" supporting claim were "contradicted both by more specific allegations in the Complaint and by facts of which [the court] may take judicial notice").

## II.    Plaintiffs Fail to Plausibly Plead that Defendants Knowingly and Substantially Assisted the Attacks.

This Court should also dismiss this case because Plaintiffs' generalized "support" allegations—political speech and a payments program—fail to satisfy an essential and demanding element of a JASTA aiding-and-abetting claim: that Defendants "knowingly and substantially assist[ed] the principal violation." *Taamneh*, 598 U.S. at 485-87; *see also Linde v. Arab Bank, PLC*, 882 F.3d 314, 329 (2d Cir. 2018) (same). Plaintiffs do not plausibly allege that Defendants provided <u>any</u> assistance—let alone "knowing" and "substantial assistance"—to the terrorists who committed the Attacks, as required by 18 U.S.C. § 2333(d).

In *Taamneh*, the Supreme Court set a higher pleading threshold to survive dismissal on the "knowing and substantial assistance" prong, applying *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983)[12] to a JASTA aiding-and-abetting claim. *See Taamneh*, 598 U.S. at 497; *accord Ashley*,

---

[12] In *Halberstam*, the D.C. Circuit "identified six factors relevant to determining 'how much encouragement or assistance is substantial enough'" to satisfy the requirement that the defendant "must knowingly and substantially assist the principal violation." *Linde*, 882 F.3d at 329 (quoting *Halberstam*, 705 F.2d at 487). "Those factors are (1) 'the nature of the act assisted,' (2) the 'amount of assistance' provided, (3) whether the defendant was 'present at the time' of the principal tort, (4) the defendant's 'relation to the tortious actor,' (5) the 'defendant's state of mind,'

144 F.4th at 435. *Taamneh* "warns that it is inappropriate to collapse the general awareness element into the <u>knowing</u> and substantial assistance element," *Ashley*, 144 F.4th at 438 n.12, and held that the "knowing" provision of substantial assistance is <u>even more demanding</u> than the "general awareness" element. *Taamneh*, 598 U.S. at 503-04. The "'knowing' part of that inquiry is … designed to capture the defendants' state of mind <u>with respect to their actions and the tortious conduct</u>," not merely general awareness. *Id.* at 504 (emphasis added).

Critically, it "is not enough" if Defendants gave "substantial assistance to a transcendent 'enterprise' separate from and floating above all the actionable wrongs that constitute it." *Taamneh*, 598 U.S. at 495; *Ashley*, 144 F.4th at 448 (same); *see also Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 294 (2025) (a complaint must "pinpoint, as most aiding-and-abetting claims do, a[] specific criminal transaction[] that the defendants (allegedly) assisted"). This is because "JASTA expressly provides that liability only attaches for aiding and abetting <u>a particular terrorist attack</u>." *Ashley*, 144 F.4th at 448 (emphasis added). *Taamneh* thus instructs that the "focus must remain on assistance to the tort," which Plaintiffs all but ignore. *Taamneh*, 598 U.S. at 505-06; *see also Ashley*, 144 F.4th at 448 (same).

To state a claim, the FAC would have to plausibly allege that Defendants took "some 'affirmative act' 'with the intent of facilitating the [Attacks]'" such that Defendants "consciously, voluntarily, and culpably participate[d] in" the Attacks "so as to help 'make [them] succeed.'" *Taamneh*, 598 U.S. at 489-90, 493-94, 497, 505-06; *id.* at 494 ("the rule imposes liability for a wrong on those who 'hel[p] another to complete <u>its commission</u>'"); *see also Smith & Wesson*, 605 U.S. at 291-92 (same); *Cox Commc'ns, Inc. v. Sony Music Ent.*, 146 S. Ct. 959, 973 (2026)

---

and (6) the 'duration of the assistance' given." *Taamneh*, 598 U.S. at 486 (quoting *Halberstam*, 705 F.2d at 488).

(Sotomayor, J., concurring) (confirming *Taamneh* and *Smith & Wesson*'s holdings that "aiding-and-abetting liability requires proof that the defendant aided another <u>with the intent of helping that other person succeed in committing wrongful conduct</u>" (emphasis added)). This is an exacting standard, and purposefully so, as "courts have long recognized the need to cabin aiding-and-abetting liability to cases of truly culpable conduct." *Taamneh*, 598 U.S. at 489; *see also id.* at 491 (assistance must "have been calculated and intended to produce" the tort (quotations omitted)).

Plaintiffs' allegations fail on all fronts because, as in *Taamneh*, Plaintiffs "have not plausibly alleged that [Defendants] knowingly provided substantial assistance to the [Attacks], let alone (as their theory of liability requires) every single terrorist act committed by [Hamas]," requiring dismissal. 598 U.S. at 506. As explained above, Plaintiffs' own prior allegations also show that Defendants actively fought Hamas's power and influence over Palestinians in connection with *this particular attack* by arresting Hamas supporters at the attacker's funeral.

## A.    Plaintiffs Fail to Allege that Defendants Provided *Any* Assistance to Hamas or the Attacks, Let Alone Knowing and Substantial Assistance.

Plaintiffs do not plausibly allege that Defendants provided *any* assistance to Hamas, let alone knowing and substantial assistance. To satisfy the <u>knowing</u> requirement, Defendants must have the "intent of facilitating" the Attacks—a standard that the FAC does not even come close to satisfying. *Taamneh*, 598 U.S. at 490; *see Long v. MTN Grp. Ltd.*, 2025 WL 2827899, at *4 (E.D.N.Y. Sept. 25, 2025) (requiring that "defendant acted with the intent of facilitating the offense's commission" (quotations omitted)). Accordingly, it is not enough for Plaintiffs to allege "knowledge, acquiescence, carelessness, indifference, [or] lack of concern." *Ashley*, 144 F.4th at 443 (citation omitted); *see also Ofisi v. BNP Paribas, S.A.*, 77 F.4th 667, 675 (D.C. Cir. 2023) ("as the Supreme Court recently reiterated, 'the concept of "helping" in the commission of a crime—or a tort—has never been boundless'" (citation omitted)). Rather, Plaintiffs must show "interested

- 11 -

cooperation, stimulation, instigation." *Ashley*, 144 F.4th at 443. That requires more than a mere general awareness of terrorist attacks committed by any terrorist, which is the most the FAC even arguably alleges.

The FAC's allegations of post-Attack statements and general payments are insufficient as a matter of law. At best, Plaintiffs allege that Defendants "glorified" the Attacks after the fact (FAC ¶ 155) through statements "on PA-owned and controlled official television, in social media, and on other publicly accessible platforms" (*id.* ¶ 7), but those conclusory general allegations do not plausibly plead "conscious, voluntary, and culpable participation" in the Attacks, as the statute requires. *See Taamneh*, 598 U.S. at 493. And, a "showing of support—even post-attack financial support to the families of terrorists—is not sufficient to demonstrate that Defendants were somehow responsible for the attacks." *Sokolow v. PLO*, 60 F. Supp. 3d 509, 517 n.11 (S.D.N.Y. 2014) (emphasis added); *see also Owens v. BNP Paribas S.A.*, 235 F. Supp. 3d 85, 98 (D.D.C. 2017) (finding "problem[atic]" that "facts alleged with respect to defendants' conduct post-date the [attacks]"), *aff'd*, 897 F.3d 266 (D.C. Cir. 2018); *Parizer v. AJP Educ. Found., Inc.*, 2025 WL 2382933, at *19 (E.D. Va. Aug. 15, 2025) (post-attack statements of support "do not support the inference that Defendants' actions specifically assisted with Hamas's October 7, 2023 attack").

The FAC does not otherwise come close to plausibly alleging that Defendants "culpably associated" themselves with the Attacks or in any way "'participated in [them] as something that they wished to bring about,' or sought 'by their action to make [the Attacks] succeed.'" *Taamneh*, 598 U.S. at 497-98, 504 (cleaned up); *see also Ashley*, 144 F.4th at 440 (same); *Murad v. Lafarge S.A.*, 2026 WL 270651, at *9 (E.D.N.Y. Jan. 30, 2026) ("[Plaintiffs] cite nothing in their complaint which contends that the Defendants 'wished to bring about' ISIS's attack on the Yazidis, or that they sought through payments and cement provisions 'to make it succeed.'").

Plaintiffs also fail to plausibly allege a substantial link or a "discernable nexus between [the defendant's assistance] and the attacks committed against Plaintiffs" as required by 18 U.S.C. § 2333(d). *Ashley*, 144 F.4th at 444; *Fraenkel v. Standard Chartered Bank*, 2025 WL 2773251, at *9 (S.D.N.Y. Sept. 26, 2025) (same). "[T]he Supreme Court has held that complaints which are 'devoid of any allegations about how much assistance' a defendant provided to the act of terrorism do not sufficiently allege that the defendant's assistance was substantial." *Long*, 2025 WL 2827899, at *4 (quoting *Taamneh*, 598 U.S. at 505-06).

*Taamneh* also rejected the Ninth Circuit's "fram[ing of] the issue of substantial assistance as turning on defendants' assistance to ISIS' activities in general" and concluded that the Ninth Circuit erred in focusing "on the value of defendants' platforms to ISIS, rather than whether defendants culpably associated themselves with ISIS' actions." *Taamneh*, 598 U.S. at 503-04. In other words, *Taamneh* "directs courts to focus on the defendant's actions vis-à-vis the specific attack that injured the plaintiffs." *Bonacasa v. Standard Chartered PLC*, 2023 WL 7110774, at *9 (S.D.N.Y. Oct. 27, 2023); *id.* at *7 ("[I]t is not enough to generally assist the terrorist organization without consideration of the specific attack that injured plaintiffs. Thus, the [*Taamneh*] plaintiffs could have stated a claim if they plausibly alleged that defendants aided and abetted ISIS in carrying out the Reina attack." (emphasis added)).

Plaintiffs have not alleged any assistance provided by Defendants to the Attacks. Indeed, none of the FAC's 207 paragraphs describes any actual "support" Defendants provided Hamas, let alone any "support" for the Attacks. And the pre-Attack allegations, which consist of the existence of a payments program and political statements against the Israeli occupation, are insufficient as a matter of law. *See Long*, 2025 WL 2827899, at *5 ("none of these specific factual allegations connect IRGC's provision of resources to his kidnapping, let alone connect MTN's aid of the

- 13 -

IRGC to the kidnapping"); *Freeman v. HSBC Holdings PLC*, 2026 WL 880107, at \*14 (E.D.N.Y. Mar. 31, 2026) (no nexus where "Plaintiffs here have not linked Defendants' [support] directly to the alleged attacks" (cleaned up)); *Parizer*, 2025 WL 2382933, at \*18 ("Plaintiffs do not plead specific facts adequate to '<u>draw a sufficient connection</u> between the cause of action Plaintiffs seek—aiding and abetting Hamas's October 7, 2023 attack overseas—and Defendants' domestic conduct.'" (cleaned up)); *Fraenkel*, 2025 WL 2773251, at \*9 (the "nexus between" the "laundering of money for customers connected to Iran or Iran's Terrorist Sponsors" and "the Attacks is too attenuated to give rise to JASTA liability here").

The D.C. Circuit's recent decision in *Atchley v. AstraZeneca UK Ltd.*, 165 F.4th 592 (D.C. Cir. 2026) provides a useful contrast.[13]  There, the plaintiffs plausibly alleged that the defendants (1) maintained an "active, direct, and particularized" relationship **with the terrorist organization responsible for the attacks**, which included "bespoke dealings" and "highly irregular and illegal" bribe payments that were directly "used to fund" the terrorist group and its "numerous attacks on the victims," *id.* at 599, 611-12; and (2) altered their usual business practices specifically to assist the terrorist organization, *id.* at 599, 611.  Here, neither "bespoke dealings" nor an "active, direct, and particularized" relationship between Defendants and Hamas is alleged.

Finally, as the Second Circuit confirmed, "it is not enough to say that the defendant assisted the terrorist organization's 'activities in general,'" *Ashley*, 144 F.4th at 444, and the FAC's allegations "are far too attenuated to provide a definable nexus between Defendants' conduct and specific terrorist attacks undertaken by [Hamas], and thus cannot support a plausible inference that Defendants knowingly sought by their actions to ensure the success of the terrorist attacks that

---

[13] *Atchley* only substantively addresses a traditional aiding-and-abetting claim, and not a theory of "pervasive and systemic" support as is necessarily alleged here.  *See infra* § II.B.

- 14 -

injured Plaintiffs." *Troell v. Binance Holdings Ltd.*, 2026 WL 636849, at *19 (S.D.N.Y. Mar. 6, 2026). Because Plaintiffs have "failed to allege a nexus between the defendants' conduct and the attacks, as JASTA so requires," the FAC must be dismissed. *Fraenkel*, 2025 WL 2773251, at *8; *see Taamneh*, 598 U.S. at 501 (rejecting "the expansive scope of plaintiffs' claims," which, "[g]iven the lack of any concrete nexus between defendants' services and the [] attack, … would necessarily hold defendants liable as having aided and abetted each and every ISIS terrorist act committed anywhere in the world"); *see also Murad*, 2026 WL 270651, at *9 (no "'concrete nexus' between a defendant's conduct and the terrorist acts at issue" where complaint "suggests the Defendants' potential knowledge of the attacks, [but] does not plausibly allege a motivation to support them"); *Freeman*, 2026 WL 880107, at *14, *16 (no nexus where plaintiffs at most alleged "aid to the wider Iranian network," not "the FTO at issue here," which was "too widespread to impart the requisite intent to aid the specific terrorist acts at issue"). The uncontested fact that the Palestinian government payments at issue were made regardless of political or religious affiliation—that is, to allegedly "illicit actors of all ilks"—negates any inference that Defendants "engage[d] in a common enterprise with any of the FTOs who committed the terrorist attacks at issue." *See Troell*, 2026 WL 636849, at *22.

**B.      Plaintiffs Fail to Show "Pervasive and Systemic" Support Sufficient to Hold Defendants Secondarily Liable.**

Plaintiffs' reliance on a theory that Defendants provided "pervasive and systemic" support to Hamas is likewise insufficient to hold them liable for aiding and abetting the Attacks. The "pervasive and systemic" theory emanated from *Taamneh*, 598 U.S. at 496, 501-02, 506, where the Supreme Court held that a defendant cannot be held secondarily liable for "a broad category of misconduct" by a principal unless the defendant provided the principal "pervasive, systemic, and culpable" aid. *See Smith & Wesson*, 605 U.S. at 292 (quoting *Taamneh*, 598 U.S. at 502).

- 15 -

Pervasive and systemic "liability is limited to the <u>rare situations</u> where the aid in question would have assisted all of the organization's terrorist attacks, such as by the provision of 'such dangerous wares that selling those goods to a terrorist group could constitute aiding and abetting a foreseeable terror attack,' or where the defendants and the terrorist group have formed a 'near-common enterprise of the kind that could establish such broad liability.'"  *Troell*, 2026 WL 636849, at \*14 (emphasis added).

Here, like the claims *Taamneh* rejected, "Plaintiffs' claims would necessarily hold defendants liable as having aided and abetted each and every terrorist act committed by [Hamas] anywhere in the world." *Lavi v. UNRWA USA Nat'l Comm., Inc.*, 2025 WL 2300038, at \*7 (D. Del. Aug. 8, 2025) (cleaned up and quoting *Taamneh*, 598 U.S. at 501).  And Plaintiffs attempt to stretch secondary liability even further beyond its bounds.  They explicitly advance a theory that is not limited to the Attacks, or even to Hamas, but instead would hold Defendants liable for all attacks committed anywhere by any Palestinian.  *See, e.g.*, FAC ¶¶ 7, 12, 18, 57-61, 67, 107, 119. Plaintiffs broadly allege that Defendants "aid[ed] and abet[ed] **thousands of terrorists** … **[and] acts of international terrorism.**" FAC ¶ 203 (emphasis added).  Toward that end, Plaintiffs claim that "[y]ears of incitement to hate and murder, glorifying murderers, and celebrating terror attacks by the Defendants, together with Defendants' perverse terror reward system, serve as the predicate for this suit." *Id.* ¶ 40; *see also id.* ¶¶ 40-41 (claiming that "Defendants PLO and PA have openly celebrated and rewarded acts of terrorism against civilians in Israel" since the PLO's founding in 1964).

Critically, Plaintiffs' expansive theory requires *heightened* allegations that Defendants took "some 'affirmative act' 'with the intent of facilitating the [Attacks].'" *Taamneh*, 598 U.S. at 490.  As *Taamneh* clarified, "the more attenuated the nexus" between the defendants' alleged

- 16 -

conduct and the act of international terrorism at issue, "the more courts should demand that plaintiffs show culpable participation through intentional aid that substantially furthered the tort." *Id.* at 506; *see also id.* at 503 ("plaintiffs' failure to allege any definable nexus between the defendants' assistance and that attack … drastically increases their burden to show that defendants somehow consciously and culpably assisted the attack"). This means Plaintiffs must plausibly plead that Defendants "intentionally associated themselves with [Hamas's] operations," "affirmatively gave aid that would assist each of [Hamas's] terrorist attacks," or that the two rivals "formed a near-common enterprise of the kind that could establish such broad liability." *Id.* at 502.

"Viewed in that light, the allegations here certainly fall short." *Lavi*, 2025 WL 2300038, at *7. The generally applicable payment programs and public statements are too general and conclusory to plausibly show "knowing" or "substantial" support for the Attacks, and because they treat all Palestinians and Palestinian factions "on equivalent terms," they cannot constitute "pervasive and systemic" support to Hamas. *Smith & Wesson*, 605 U.S. at 294-95. Plaintiffs concede as much. *See, e.g.*, FAC ¶ 119 (payments program "do[es] not discriminate based on a terrorist's affiliation"); *id.* ¶ 67 (Defendants provide payments "regardless of the terrorist's individual affiliation with particular groups or sects," and "whether an individual terrorist is a member of Hamas, [Palestine Islamic Jihad], Fatah, PFLP, or any other group is of no moment to Defendants"). As in *Taamneh*, 598 U.S. at 502, Plaintiffs' allegations are "a far cry from the type of pervasive, systemic, and culpable assistance to a series of terrorist activities that could be described as aiding and abetting each terrorist act—and, indeed, their prior allegations show that Defendants have been fighting Hamas instead.

- 17 -

**III.    The FAC Fails to Plausibly Plead that Defendants Were "Generally Aware" They Were Assuming a Role in Terrorist Activity.**

Plaintiffs' generalized "support" allegations of political speech and a payments program also fail to show that Defendants were "generally aware" of their role "as part of an overall illegal or tortious activity" at the time of the assistance. *Taamneh*, 598 U.S. at 485-87.  The Court need not reach this issue given Plaintiffs' failure to plead the more demanding "knowing" requirement, discussed above. *See Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 870 (D.C. Cir. 2022).  But secondary liability under JASTA also requires the defendant to be "generally aware of his role as part of an overall illegal or tortious activity at the time he provides the assistance." *Taamneh*, 598 U.S. at 486.  In other words, secondary liability "requires the secondary actor"—here, the PA and PLO—"to be 'aware' that, by assisting the principal, [they were themselves] assuming a 'role' in terrorist activities" and that the intent of those activities "was to intimidate or coerce civilians or to affect a government." *Linde*, 882 F.3d at 329-30.  The FAC does not plausibly allege that Defendants were "aware" that they were assuming a "role" in terrorist activity, independently requiring dismissal. *Taamneh*, 598 U.S. at 486-87.

For a showing of general awareness, "[i]t is not enough for a defendant to be aware 'of the organization's connection to terrorism,'" "[n]or is it even sufficient for a defendant to knowingly violate laws which were designed to prevent terrorist activity." *Wildman v. Deutsche Bank Aktiengesellschaft*, 2022 WL 17993076, at *7 (E.D.N.Y. Dec. 29, 2022), *aff'd sub nom. Ashley*, 144 F.4th 420; *Honickman v. BLOM Bank SAL*, 6 F.4th 487, 498-99 (2d Cir. 2021) (rejecting argument that, because "[m]oney is fungible," JASTA aiding-and-abetting liability can be premised solely on knowing and material support to an FTO); *Ashley*, 144 F.4th at 444 (rejecting "theory [of liability] based on money's fungibility"); *Freeman*, 2026 WL 880107, at *17 (same).

- 18 -

Plaintiffs have failed to allege that Defendants' provision of the alleged support would have made Defendants "aware" that they were playing a "role" in Hamas's terrorist activities. *See Honickman*, 6 F.4th at 496 (requiring a showing that Defendants "must be generally aware of [their] role in an overall illegal activity from which the act that caused the plaintiff's injury was <u>foreseeable</u>"). Indeed, the FAC fails to draw any link whatsoever between terrorist activity and the support allegedly provided by Defendants. To the contrary, Defendants as governmental entities "invariably maintain legitimate government activities," *Bernhardt*, 47 F.4th at 868, including the provision of welfare programs and funding to public services like media and education, none of which would make Defendants "aware" that they were playing a "role" in any terrorist activities. The FAC must be dismissed.

## CONCLUSION

For the foregoing reasons, the First Amended Complaint should be dismissed with prejudice.

Dated: May 1, 2026

Respectfully Submitted,

**SQUIRE PATTON BOGGS (US) LLP**

*/s/Gassan A. Baloul*

Gassan A. Baloul
gassan.baloul@squirepb.com
Mitchell R. Berger
mitchell.berger@squirepb.com

2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

Gassan A. Baloul, an attorney duly admitted to practice before this Court, certifies that on May 1, 2026, I caused true and correct copies of the foregoing to be served on Plaintiffs' counsel of record via electronic filing on the Court's CM/ECF system.

Dated:  May 1, 2026

/s/Gassan A. Baloul
Gassan A. Baloul